No. 26-1864

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

---

Tushawn Craig, et al.
*Plaintiffs-Appellees,*
v.

City of Richmond, Indiana
*Defendant-Appellant.*

---

Appeal from the United States District Court for the Southern District of Indiana

Case No. 1:25-cv-00782-MPB-MJD

The Honorable Matthew P. Brookman

---

**BRIEF OF APPELLEES**

---

Trevor J. Crossen (No. 18592-49)
Gina M. Koeneman (No. 36989-29)
Andrew W. Ardizone (No. 38769-49)
CROSSEN LAW FIRM LLC
4661 Lisborn Drive
Carmel, Indiana 46033
T: (317) 939-6800

*Counsel for Plaintiffs-Appellees*

May 21, 2026

Save As      Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **26-1864**

Short Caption: **Tushawn Craig, et al. v. City of Richmond, Indiana**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Tushawn Craig, Marquette Stokes, James Allen, L.A. by and through his parent James Allen, and Daisy Helton

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Crossen Law Firm LLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: **s/ Trevor J. Crossen**    Date: **5/22/26**

Attorney's Printed Name: **Trevor J. Crossen**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: **4661 Lisborn Drive, Carmel, Indiana 46033**

Phone Number: **317-939-6800**    Fax Number: **317-939-6801**

E-Mail Address: **trevor@crossenlawfirm.com**

rev. 12/19 AK

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **26-1864**

Short Caption: **Tushawn Craig, et al. v. City of Richmond, Indiana**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Tushawn Craig, Marquette Stokes, James Allen, L.A. by and through his parent James Allen, and Daisy Helton

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Crossen Law Firm LLC

(3)   If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: **s/ Gina M. Koeneman**      Date: **5/22/26**

Attorney's Printed Name:   **Gina M. Koeneman**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address:   **4661 Lisborn Drive, Carmel, Indiana 46033**

Phone Number: **317-939-6800**      Fax Number: **317-939-6801**

E-Mail Address: **gina@crossenlawfirm.com**

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **26-1864**

Short Caption: **Tushawn Craig, et al. v. City of Richmond, Indiana**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Tushawn Craig, Marquette Stokes, James Allen, L.A. by and through his parent James Allen, and Daisy Helton

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Crossen Law Firm LLC

(3) If the party, amicus or intervenor is a corporation:

   i)   Identify all its parent corporations, if any; and

   ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: **s/ Andrew Ardizone**          Date: **5/22/26**

Attorney's Printed Name: **Andrew W. Ardizone**

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: **4661 Lisborn Drive, Carmel, Indiana 46033**

Phone Number: **317-939-6800**          Fax Number: **317-939-6801**

E-Mail Address: **andrew@crossenlawfirm.com**

rev. 12/19 AK

# **TABLE OF CONTENTS**

Page

Table of Contents……………………………………………………………………… 2

Table of Authorities…………………………………………………………………. 3

Jurisdictional Statement …………………………………………………………...5

Statement of the Case …………………………………………………………..7

Summary of the Argument …………………………………………………… 10

Argument…………………………………………………………………………11

    1.   The City of Richmond's Brief is Predicated Upon the Mischaracterization of the Citizens of Richmond's Complaint for Damages and Allegations Therein…………..11

    2.   The April 11, 2023, Fire at the Industrial Facility in Richmond, Indiana Was a Singular Event……………………………………………………………………………12

    3.   The District Court Did Not Have Jurisdiction Since the Case Was Not a Mass Action Under CAFA ……………………………………………………………………23

Conclusion…………………………………………………………………………..27

Certificate of Compliance with Type-Volume Limit, Typeface Requirements And Type-Style Requirements……………………………………………………...29

Certificate of Service………………………………………………………………..30

# TABLE OF AUTHORITIES

**Cases** Page

*Abednego v. Aloca, Inc.*, No. 10-9, 2011 WL 941569 (D.V.I. Mar. 17, 2011)……………..……24

*Abraham v. St. Croix Renaissance Group, L.L.L.P.,* 719 F.3d 270 (3d Cir. 2013) ………13, 16, 18

*Adams v. Int'l Paper Co.*, 2017 WL 1828908 (S.D. Ala. May 5, 2017) ……………. 13, 20, 23-25

*Addison v. Louisiana Reg'l Landfill Co.*, 398 F. Supp. 3d 4 (E.D. La. 2019) ……………13, 15, 24

*Allen v. Boeing Co.*, 784 F.3d 625 (9th Cir. 2015)……………………………………………..passim

*Allen v. Monsanto Co.*, 2010 WL 8752873 (N.D. Fla. Feb. 1, 2010) ………………….....13, 23-25

*Anderson v. Bayer Corp,* 610 F.3d 390 (7th Cir. 2010) ………………………………...…6-7

*Armstead v. Multi-Chem Grp., LLC.*, No. 6:11-2136, 2012 WL 1866862 (W.D. La. May 21, 2012)……………………………………………………………………..………24

*Breakman v. AOL LLC*, 545 F. Supp. 2d 96 (D.D.C. 2008)……………….…………………26

*Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005) ………………….....23, 25

*Connecticut v. Moody's Corp.*, No. 3:10cv546, 2011 WL 63905 (D. Conn. Jan. 5, 2011)……...26

*Continental Indem. Co. v. Bll, Inc.*, 104 F. 4th 630 (7th Cir. 2024)………………………………25

*Cooper v. R.J. Reynolds Tobacco Co.*, 586 F. Supp. 2d 1312 (M.D. Fla. Aug. 29, 2008)………24

*George v. Islamic Republic of Iran*, 63 F. App'x 917 (7th Cir. 2003)…………….…………...25

*Hamilton v. Burlington N. Santa Fe Ry. Co.*, No. A-8-CA-132, 2008 WL 8148619 (W.D. Tex. Aug. 8, 2008) ……………………………………………………………………………… 13

*Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876 (7th Cir. 2002)……………………………25

*Holiday v. Alt. Richfield Co.,* No. 2:16-cv-525 JVB, 2018 WL 11409352 (N.D. Ind. Mar. 7, 2018)……………………………………………………………..…………..14, 24

*Hukic v. Aurora Loan Servs.,* 588 F.3d 420 (7th Cir. 2009)…………………………………...25

*Lafalier v. Cinnabar Serv. Co., Inc.*, 2010 U.S. Dist. LEXIS 36215, 2010 WL 1486900 (N.D. Okla. April 13, 2010) …………………………………………………..……… 12

*Lowery v. Honeywell Int'l, Inc.*, 460 F. Supp. 2d 1288 (N.D. Ala 2006)…………………..……24

*LG Display Co. v. Madigan,* 665 F.3d 768 (7th Cir. 2011) …………………………………………….7

*Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132 (D.D.C. 2010)…………..26

*Page v. Democratic Nat'l Comm.*, 2 F.4[th] 630 (7th Cir. 2021)…………………………………...25

*Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405 (5th Cir. 2014)……………
…………………………………………………………………………………13, 18, 20, 24, 25

*Rightsell v. Carrington Mortg. LLC*, 2026 U.S. Dist. LEXIS 51716 (N.D. Ind. Mar. 6, 2026)…11

*Robertson v. Chevron USA, Inc.*, 2016 WL 3667153 (E.D. La. July 11, 2026) …..…13-14, 19-20

*Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735 (11th Cir. 2020) ………………13, 24-25

*Sykes v. Cook Inc.*, 72 F.4[th] 195 (7ith Cir, 2023) …………………………………………..25

*Ware v. Best Buy Stores, L.P.*, 6 F.4[th] 726 (7th Cir. 2021) …………………………………25

**Rules** <span>Page</span>

28 U.S.C. § 1453(c)……………………………………………………………………………….7

28 U.S.C. § 1441……………………………………………………………………………………25

28 U.S.C. § 1332…………………………………………………………………………….passim

**Scholarship Repository** <span>Page</span>

S. Rep. N. 109-14, at 46 (2005) ……………………………………………………..………13, 24

**JURISDICTIONAL STATEMENT**

The Appellees (hereinafter "the citizens of Richmond") are dissatisfied with Appellant's ("City of Richmond") jurisdictional summary as it is incomplete and incorrect because the District Court never had jurisdiction under 28 U.S.C. § 1332(d)(11)(B) when the case does not constitute a mass action. That is the crux of the issue before this Honorable Court.

Under 28 U.S.C. § 1332(d)(11), the district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a mass action. A mass action is a civil action in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact. 28 U.S.C. § 1332(d)(11)(B)(i).

**The term mass action shall *not* include any civil action in which all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly result in injuries in that State or in States contiguous to that State**. 28 U.S.C. § 1332(d)(11)(B)(ii). CAFA has a "local single event exception" that applies "only to a truly local single event with no substantial interstate effects." *Allen v. Boeing Co.*, 784 F.3d 625, 632 (9th Cir. 2015).

The citizens of Richmond do not dispute that at the time of Removal, there were 100 or more persons, minimal diversity was present, and the aggregate amount in controversy exceeded $5,000,000.00. At that time, the citizens of Richmond additionally pursued this case against My-Way Trading, Inc., an Ohio corporation.

Notably, the citizens of Richmond subsequently filed a Notice for Voluntary Dismissal of Defendant, My-Way Trading, Inc., under Federal Rule of Civil Procedure 41(a) prior to their

Answer to Plaintiffs' Complaint.[1] Therefore, this case is brought by citizens of Richmond, against the City of Richmond in the State of Indiana, Seth Smith, a resident of Indiana, and Cornerstone Trading Group, LLC, an Indiana corporation.

**This is a civil action brought in Richmond, Indiana, in which all of the claims are arising from a fire on April 11, 2023, in Richmond, Indiana that caused injuries to the citizens of Richmond, Indiana.** The District Court did not have original jurisdiction under CAFA at the time of removal when the single event or occurrence exception applied. This is the basis of the City of Richmond's appeal.

While the District Court determined that jurisdiction existed in an entirely separate class action suit relating to the same fire, the District Court's determination on jurisdiction was based solely upon factors that do not apply to the case at hand.[2] In that proceeding, the City of Richmond identified three potential class members that were foreign citizens. Those individuals are not in this lawsuit. All of the Plaintiffs in this case are citizens of Richmond (and thus aptly identified herein). The District Court did not base their determination in the class action on 28 U.S.C. § 1332(d)(11)(B)(i); the District Court's decision in a completely different case does not apply nor mandate jurisdiction in this matter.

Since the District Court properly concluded that this matter was not a mass action and that it did not have jurisdiction, the Seventh Circuit Court of Appeals similarly does not have jurisdiction to hear an appeal on the remand order. We explicitly see this in *Anderson v. Bayer*

---

[1] The City of Richmond makes several references to the citizens of Richmond's claims against My-Way Trading Inc.; however, those claims are wholly inapplicable when they have been dismissed from this lawsuit. The citizens of Richmond would therefore respectfully request this Court decline to consider any evaluation of the issues at hand as they apply to My-Way Trading, Inc.

[2] 1:23-cv-1575, S.D. Ind., Dkt. 71.

*Corp.* and *LG Display Co. v. Madigan*. 610 F.3d 390 (7th Cir. 2010); 665 F.3d 768 (7th Cir. 2011). In those matters, after initially being removed to federal court under CAFA, the Court found that the cases did not meet the definition of "mass actions" under 28 U.S.C. § 1332(d)(11)(B). *Id.* Irrespective of the specific provision of 28 U.S.C. § 1332(d)(11)(B) that the Court found inapplicable, in both of those cases the District Court correctly determined that the case was not a mass action under CAFA. *Id.* Thus, the Appellate Court lacked jurisdiction over an appeal from the district court's remand order, and the petition to leave for appeal under 28 U.S.C. § 1453(c) was denied. *Anderson*, 610 F. 3d at 395; 655 F.3d at 774. The same applies here.

Given that the District Court did not have jurisdiction under CAFA, the Seventh Circuit Appellate Court lacks jurisdiction over this appeal from the District Court's Order Adopting Magistrate Judge's Recommended Disposition. (JA1-JA12).

<u>**STATEMENT OF THE CASE**</u>

The City of Richmond's mischaracterization of the statement of the case and the citizens of Richmond's allegations in their Complaint is at the heart of all of the issues henceforth. On April 11, 2023, the properties at 308, 310, and 358 NW F Street in Richmond, Indiana (hereinafter "the Industrial Facility") were engulfed by a massive fire and burned for at least seven (7) days. (Civil Action No. 1:23-cv-1575, Dkt. 1-3, p. 4). **This fire is the singular event from which the citizens of Richmond were injured.**

On the day the fire started, the City of Richmond owned the properties on 358 and 310 NW F Street ("358" and "310", respectively). *Id.* Defendant, Seth Smith, the President and Registered Agent of Defendant, Cornerstone Trading Group, LLC (hereinafter "Cornerstone"), owned the property on 308 NW F Street ("308"). *Id.*

As a direct result of that fire, police and fire officials issued an order requiring individuals within 0.5 miles of the Industrial Facility to evacuate and those outside the evacuation zone to shelter in place. *Id.* The evacuation order was lifted on April 16, 2023, but it was not until April 19, 2023, that the Richmond Fire Department declared that the fire had been extinguished. *Id.*

No harm nor foul transpired or befell upon the citizens of Richmond that is being claimed in this lawsuit before the fire on April 11, 2023. Before April 11, 2023, surrounding residents were never ordered to evacuate their homes; schools and other business did not shut down due to safety concerns; black smoke did not circulate through the streets; citizens could plant flowers in their gardens without them dying; the EPA did not conduct air monitoring test throughout the City of Richmond; and the citizens of the City of Richmond did not have an actionable lawsuit for all of the various injuries they sustained as a result of that tragic day. All damages stem from the fire.

In the citizens of Richmond's Complaint, they identify several instances where the City of Richmond and other culpable Defendants knew of the dangers and fire hazards that these properties posed. *Id.* The timeline depicted therein was not continuous claims of negligence – as their actions had not yet caused any injuries to the citizens of Richmond – but were merely evidence of the City of Richmond's pre-existing knowledge of the dangerous conditions, their duty(s), and the reasonableness of their failure to prevent this tragic event. Although there were several actions and inactions by the Defendants over the years preceding April 11, 2023, the initiation of injuries or damages did not occur nor affect these Plaintiffs-Respondents until the properties quite literally went up in flames. This is a critical distinction in the evaluation of the citizens of Richmond's claims: there is no injury and thus no cause of action until the fire on April 11, 2023.

As a result, two lawsuits have been pursued that stem from this catastrophic inferno on April 11, 2023: (a) a class action brought by the residents within the evacuation zone[3] and (b) the present, individual action brought by one hundred and fifty-two (152) citizens of Richmond, both inside and outside of the evacuation zone.

The individual action at hand is composed of one hundred and fifty-two (152) citizens of Richmond. Of those, approximately 119 citizens reside within the half mile radius of the fire that would qualify them as members of the class. The remaining 33 citizens reside outside of the half mile radius and would not qualify as class members. This was not a duplicative lawsuit; all one hundred and fifty-two (152) citizens would have their own individualized claim irrespective of the class action should they opt out of or not qualify as members of the class.[4]

By the time the two-year statute of limitations approached in April of 2025, the Southern District Court had not determined whether to certify the class.[5] In order to preserve the claims of potential class members and citizens who did not meet the definition of a class member, this individualized action was filed.[6] The citizens of Richmond's Complaint alleges that for years leading up to the April 11, 2023, fire, Defendants were aware that a fire hazard existed and failed to take affirmative steps to address it.

On August 11, 2025, the Magistrate Judge *sua sponte* issued a Report and Recommendation to remand this matter to state Court. (JA30-38). After the City objected to the

---

[3] 1:23-cv-1575, S.D. Ind.; Crossen Law Firm no longer represents the class action plaintiffs.
[4] The citizens of Richmond have relayed to the Defendants and to the Court that if they qualify for the class and opt in, they will be dismissed from this matter accordingly. At the time of this filing, none of the citizens of Richmond have opted into the class.
[5] The Class was subsequently certified and class members are actively being notified. 1:23-cv-1575, S.D. Ind.
[6] Accusing the citizens of Richmond of forum shopping and attempting to avoid a District Court's denial of remand in a separate case is disingenuous and unnecessary when remand was determined by the District Court *sua sponte*. (App. Dkt. 26-1854, Dkt. 12, p. 8 and 38).

Magistrate's recommendation, the District Court issued an Order Adopting the Magistrate Judge's Recommended Disposition. (JA1-JA12). Since all of the claims in the action arise from that singular, catalytic event in Richmond, Indiana, the claim does not qualify as a mass action under CAFA, and the District Court did not have jurisdiction. The District Court properly remanded this case to State Court.

## SUMMARY OF THE ARGUMENT

The citizens of Richmond respectfully request this Court affirm the District Court's Order Adopting Magistrate Judge's Recommendation (JA1-JA12) when the District Court did not have jurisdiction since the citizens of Richmond's Complaint involved a local, singular event or occurrence.

Firstly, the City of Richmond's misinterpretation of the citizens of Richmond's claims gives rise to the confusion in appropriately applying 28 U.S.C. § 1332(d)(11)(B)(ii). Since none of the citizens of Richmond were harmed by any conduct (or lack thereof) by the City of Richmond until the fire on April 11, 2023, they are not alleging continuous claims.

Secondly, the exception under 28 U.S.C § 1332(d)(11)(B)(ii) applies when the April 11, 2023, fire meets the definition of an event or occurrence in the state in which the action was filed that resulted in injuries in that state. By applying the Ninth Circuit's interpretation of "event" under *Allen*, the April 11, 2023, fire falls into the exception when it was a truly local, notable, singular, injury causing event with no substantial interstate effects. Furthermore, no matter what Circuit Court's analysis is applied, this case falls under the exception. This matter wholistically and perfectly reflects the legislative intention of CAFA and should be remanded to state court.

Lastly, the City of Richmond failed to evidence that the District Court had jurisdiction at the time of removal. The exception is part of the definition of a mass action, which needed to be

evidenced by the moving party at the time of removal. Since the City of Richmond did not meet that burden, the District Court had the authority and an obligation to *sua sponte* remand the case when it did not have jurisdiction.

## ARGUMENT

**1. The City of Richmond's Brief is Predicated Upon the Mischaracterization of the Citizens of Richmond's Complaint for Damages and Allegations Therein.**

First and foremost, the City of Richmond misconstrues the citizens of Richmond's allegations that the City of Richmond knew or should have known of the dangers as being explicit acts or omissions that caused their injuries. That is not the case. The citizens of Richmond's negligence claims relate to the ignition of the three parcels of land – not the several circumstances that occurred over various periods of time. There was no injury and thus no cognizant claim until the fire, the culminating and pivotal moment of injury, on April 11, 2023.

To be abundantly clear, the citizens of Richmond alleged that Defendants owned the Industrial Facility, knew the Industrial Facility was a fire hazard, failed to reasonably remedy the fire risk, and that as a consequence, a massive fire ensued, causing the citizens of Richmond to suffer the damages they currently seek. Simply put, the Defendants' negligence caused the fire and the fire caused their injuries.

In Indiana, the elements of a personal injury tort are: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; and (3) that the breach caused injury to the plaintiff. *Rightsell v. Carrington Mortg. LLC*, 2026 U.S. Dist. LEXIS 51716 at *6 (N.D. Ind. Mar. 6, 2026). The most imperative distinction here is that there is no tort claim unless it caused injuries.

The City of Richmond is overcomplicating this simple lawsuit. The citizens of Richmond were living their lives unharmed and unaffected by the activities and dealings at the Industrial Facility until the day of the fire. Defendants absolutely failed to adhere to Building Commission Orders, neglected to follow applicable codes or ordinances, conducted ultra hazardous activities, and dumped thousands upon thousands of pounds of plastic across three parcels of land for years. However, the citizens of Richmond did not have a claim against them for doing so until it caused them injuries when it all exploded on April 11, 2023.

Having clarified the basis of the citizens of Richmond's allegations, defining the "event or occurrence" under the CAFA exception is much more apparent.

**2. The April 11, 2023, Fire at the Industrial Facility in Richmond, Indiana Was a Singular Event**

Secondly, the ultimate issue is whether a case involving a sudden, industrial fire at one location on April 11, 2023 constitutes a "mass action" when it *shall not* include any civil action in which all of the claims in the action arise from an *event or occurrence* in the State in which the action was filed, and that allegedly resulted in injuries in that State." 28 U.S.C. § 1332(d)(11)(B)(ii)(I) (emphasis added). "The 'event or occurrence' exclusion under CAFA applies only where all claims arise from a single event or occurrence." *Allen*, 784 F.3d at 629 (quoting *Lafalier v. Cinnabar Serv. Co., Inc.*, 2010 U.S. Dist. LEXIS 36215, 2010 WL 1486900, at *4 (N.D. Okla. April 13, 2010)).

The legislative history of CAFA supports the interpretation that the exception was intended to apply "only to a truly local single event with no substantial interstate effects" in order to "allow cases involving environmental torts such as a chemical spill to remain in the state court if both the event and the injuries were truly local." S. Rep. N. 109-14, at 41 (2005). This perfectly aligns with the matter at hand.

The Southern District Court of Indiana found that the case did not constitute a "mass action" when all of the claims arose from the fire at the Industrial Facility in the State in which the action was filed, and caused injuries to the local citizens of Richmond, Indiana. (JA1-JA12). Specifically, the District Court held that "[t]he exclusion encompasses a continuing set of related circumstances when they culminate in a single event like the Richmond fire." (JA9).

The District Court further held that "event" includes "continuing tortious conduct so long as that conduct 'culminate[d]' in a single, injury causing event." (JA8). In support, the District Court cited several cases across all Circuits that have generally read "event or occurrence" to include tortious conduct that "culminate[d]" in a single, injury causing event. *Id.; See Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735 (11th Cir. 2020); *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405 (5th Cir. 2014); *Abraham v. St. Croix Renaissance Group, L.L.L.P.*, 719 F.3d 270 (3d Cir. 2013); *Addison v. Louisiana Reg'l Landfill Co.*, 398 F. Supp. 3d 4, 13 (E.D. La. 2019); *Adams v. Int'l Paper Co.*, 2017 WL 1828908 at *6 (S.D. Ala. May 5, 2017); *Robertson v. Chevron USA, Inc.*, 2016 WL 3667153 at *9 (E.D. La. July 11, 2026); *Allen v. Monsanto Co.*, 2010 WL 8752873 at *10 (N.D. Fla. Feb. 1, 2010); *Hamilton v. Burlington N. Santa Fe Ry. Co.*, No. A-8-CA-132, 2008 WL 8148619, at *12 (W.D. Tex. Aug. 8, 2008). Applying it to the case at hand, the District Court found that the citizens of Richmond's allegations fell within the scope of the exception: it involved a truly local event with no substantial interstate effects; the fire allegedly caused some environmental harm; and the injuries were all truly local. (JA1-JA12; JA37).

Although the Seventh Circuit has not explicitly addressed the issue as to when the exception applies, the District Court's decision that the citizens of Richmond's claims arose out of a single event is consistent with various Circuit Courts' interpretations and the plain meaning of

the exception when there was not any harm to the citizens of Richmond until the ultimate, single, and local injury causing event on April 11, 2023.

As the District Court acknowledged, continuous conduct that was potentially wrong does not equal a claim until it culminated at a single instance in an injury causing event. (JA8). This differs from the facts in *Holiday v. Alt. Richfield Co.* which continuously caused plaintiffs' injuries over a span of time. No. 2:16-cv-525 JVB, 2018 WL 11409352 (N.D. Ind. Mar. 7, 2018). Conversely, the citizens of Richmond are not claiming any injury from any conduct that happened before the fire on April 11, 2023; all of the citizens of Richmond's injuries stemmed from and are as a result of the April 11, 2023, fire. The District Court therefore correctly concluded that the exception applied to the case at hand.

Instead, the City of Richmond asks this Court to adopt the Ninth Circuit's evaluation under *Allen.* (App. Dkt. 26-1864, Dkt. 12, p. 10); 784 F.3d 625. In doing so, the City of Richmond requested that the Seventh Circuit apply the plain language of CAFA and hold that an event means a singular happening. *Id.* However, the District Court's decision is additionally supported by *Allen* and would provide the same result: the single event exception applies.

In Allen, CAFA's "local single event exception" applies "only to a truly local single event with no substantial interstate effects." 784 F.3d at 632; (App. Dkt. 26-1864, Dkt. 12, p. 10). *Allen* provides that an 'event' is 'something (especially something important or notable) that happens' or 'a thing that happens, esp. one of importance.' *Id.* at 630-31. The court read "an event or occurrence" to mean a "single happening." *Id.* at 631. The court indicated that "an event or occurrence" should not apply to continuing tortious conduct unless it culminates in a single event. *Id.* There must be a single, claim-generating event – such as a fire. *Id.; see also Robertson*,

14

2016 WL 3667153; *Addison*, 398 F. Supp. 3d 4. This is equivalent to the approach taken by the District Court. *See* (JA9-JA10).

Here, there was a local, single event, caused by several parties, when several properties caught on fire on April 11, 2023, substantially affecting the surrounding neighborhoods and their residents. This case does not involve any interstate effects as it was contained within the City of Richmond. This was undoubtedly an important and notable event for Richmond. These citizens of Richmond and the Industrial Facility were conducting business as usual until the fire engulfed the properties. They did not have a claim against the Defendants until April 11, 2023.

The City of Richmond also correctly points out that the Ninth Circuit noted that the legislative history draws a line between a one-time event and continuing course of conduct over several years. (App. Dkt. 26-1864, Dkt. 12, p. 21). Specifically, the court in *Allen* directly analyzed the issue, providing that: "if an oil refinery has an accident and, as a result, releases toxic materials into the air or water, a suit against the refinery based on the accidental release of contaminants would fall within the exception, but an action against the refinery alleging a continuous course of pollution over a number of years would not." *Allen*, 784 F.3d at 632.

The *Allen* definition of the exception applies squarely here. Unlike cases involving a continuous course of tortious conduct gradually over many years, the citizens of Richmond are suing for the devastating consequences of a single catastrophic event: a massive industrial fire and explosion. While the City of Richmond may have been long aware of the accumulating plastics and debris on its properties, that mere accusation did not itself cause the citizens of Richmond's injuries. It was not until the Industrial Facility went up in smoke that families were displaced; neighborhoods were covered in soot and ash; homes were blackened with smoke; residents were forced to incur unexpected and mandatory expenses to find safe shelter for

themselves and their pets; HVAC systems were shut down; people were forced to miss work; children were unable to go to school due to serious health concerns; families poured into Reid Health with trouble breathing; and the citizens of Richmond were harmed.

Based on *Allen*, this case falls squarely within the exception when the citizens of Richmond are not alleging a continuous course of tortious conduct that occurred over a number of years but are instead bringing suit for a one-time fiery explosion. Hence, the exception would apply to this case under the Ninth Circuit's analysis when this is a singular happening.

A slightly more generous yet uncanny analysis was also applied by the Third Circuit in *Abraham*. 719 F.3d 270. This case is particularly compelling – and ultimately dispositive – to the matter at hand. In *Abraham*, plaintiffs argued that defendants purchased property while knowingly allowing hazardous conditions to remain on the property that could cause injury to plaintiffs and their property. *Id.* at 273. The defendant removed the case to the district court, but plaintiffs argued that removal was improper because the action fell within the local single event exception. *Id.* The defendants contended that the exception did not apply because they understood plaintiffs' complaint to allege that 'there were multiple events and occurrences over many years' that did not make it a single event or occurrence. *Id.*

The Third Circuit rejected defendant's argument and held that the action fell within the local single event exception, explaining:

> "As the District Court explained, the 'word event in our view is not always confined to a discrete happening that occurs over a short period over a short time span *such as a fire, explosion*, hurricane, or chemical spill… The Court's construction of the word is consistent with the word's common usage. Important events in history are not always limited to discrete incidents that happened at a specific and precise moment in time.
>
> As further support for this construction, we note that the plain text of the exclusion and the statutory scheme do not delimit the words "event or occurrence" to a specific incident with a fixed duration of time. Because the

words "event" and "occurrence" do not commonly or necessarily refer in every instance to what transpired at an isolated moment in time, there is no reason for us to conclude that Congress intended to limit the phrase "event or occurrence" in Section 1332 (d)(11)(B)(ii)(I) in this fashion. Accordingly, where the record demonstrates circumstances that share some commonality and persist over a period of time, these can constitute "an event or occurrence" for the purposes of exclusion in Section 1332 (d)(11)(B)(ii)(I).

In short, treating a continuing set of circumstances collectively as an "event or occurrence" for the purpose of the mass-action exclusion is consistent with the ordinary use of the words, which do not necessarily have a temporal limitation. Giving the words "event" or "occurrence" their ordinary meaning is not at odds with the purpose of the statutory scheme of CAFA. Congress clearly contemplated that some mass actions are better suited to adjudication by the state courts in which they originated. This intent is evident in both the "event or occurrence" exclusion for mass actions, as well as the local-controversy and home-state exemptions in Section 1332(d)(4)(A) and (B) for class actions. These provisions assure that aggregate actions with substantial ties to a particular state remain in the courts of that state." *Id.* at 277-78 (emphasis added).

The Third Circuit's interpretation of this material phrase directly contemplates a "fire" such as the one that persisted for approximately seven (7) days at issue in this case. In explaining the meaning of the term "event," the Third Circuit recognized that an occurrence may be temporally limited to a single day, or it may extend over a period of days, such as this fire – or a seven-game World Series as proffered by the District Court. Thus, the duration of the occurrence does not alter its character as a singular event or occurrence under CAFA.

This is supported by Congress' stated purpose in enacting the exception: ensuring that aggregate disputes with substantial ties to a particular state remain in that state's court. Here, there can be little dispute that the fire at the Industrial Facility, its effects, and the injuries suffered by the citizens of Richmond are uniquely and overwhelmingly tied to the State of Indiana.

Even under a very expansive interpretation of the citizens of Richmond's Complaint, their claims still meet the definition of event or occurrence under the Third Circuit's scrutiny. This

application of *Abraham* was further tapered in the Ninth Circuit in *Allen* to provide that the local single event exception is limited to a "local single event." *See Allen,* 784 F.3d at 634. That is the standard the City of Richmond requests be applied in the Seventh Circuit.

The Fifth Circuit also presented a similar approach in *Rainbow Gun Club, Inc.* 760 F.3d 405. The court held that "a singular event or occurrence, as contemplated by the exclusion, need not be precisely confined to a moment in time" and found no time limitation in light of CAFA's legislative history. *Id.* at 409-11. In applying to its case, the court reasoned that since the plaintiffs' claims "do not arise from any one of the several alleged acts of negligence, but from the single occurrence that resulted from the collective related acts, the case fell within the exception. *Id.* at 412-413.

Under any and all of these applications, the fire on April 11, 2023, clearly meets the definition of "an event" under the mass action exception. The parties frankly do not disagree on the rules, application of the case law, or the interpretation of the exception. Instead, the parties (and the District Court) disagree on how to apply this undisputed definition of a singular event to the citizens of Richmond's Complaint specifically. Because the City of Richmond fails to appreciate or understand the citizens of Richmond's allegations, they are misapplying the case law that has already established a bright line rule addressing this exact issue. *See Allen,* 784 F.3d 625.

The City of Richmond advances an unnecessarily expansive and overly broad interpretation of the claims asserted in the citizens of Richmond's Complaint. Specifically, the City of Richmond urges this Court to interpret the allegations in a manner designed to evade application of the CAFA exceptions. The District Court properly rejected this sweeping

interpretation presented by the City of Richmond, and the citizens of Richmond respectfully request this Court do the same.

Although the Defendants had a duty and arguably breached that duty for years leading up to the fire, there were no claims for negligence until all of those actions and omissions explicitly caused the citizens of Richmond's injuries when the fire erupted. The key concern is the injurious conduct itself, not the acts or omissions leading up to it. (JA34). The insurmountable evidence of disregard over several years leading up to that fateful day is more so indicative of the Defendants' unquestionable, long-withstanding knowledge of the hazards – not a continuous claim of wrongdoings that caused injuries. This storm was undoubtedly brewing for several years, but the citizens were not hurt until lightning struck. The District Court correctly identified that.

The "chain of events" that caused the injuries is not everything building up for twenty years, but the literal spread of the fire from parcel to parcel. It was not the City of Richmond's negligent ignoring of safety warnings "as early as 2005" that gave rise to these claims – nor have the citizens of Richmond been hurt since 2005. *Contra* (App. Dkt. 26-1864, Dkt. 12, p. 11). To that end, the citizens' "ongoing diminution of property values" started and stems from the date of the fire and onward – not from before April 11, 2023. *Id.* Environmental contamination, the evacuation, their home depreciation, and the remainder of the citizens of Richmond's claimed damages did not exist until the fire happened.

The City of Richmond also does not get to step outside of a jurisdictional exception just because multiple defendants contributed to the same collective harm at a singular instance when the fire erupted. *Robertson* does not support the City of Richmond's contention that the local single event exception does not apply. 2016 WL 3667153. The crux of *Robertson* was not the

number of the defendants, but the failure of the different defendants' conducts to culminate in a single, claim-generating event. *Id.* There is no case law treating the presence of multiple defendants as dispositive when multiple defendants can jointly contribute to a single event. Instead, the court in *Robertson* looked at the nature of the alleged conduct. *Id.*

Here, multiple Defendants, including the City of Richmond, jointly the fire. This case addresses one fire, at one centralized location in the City of Richmond, that began burning on April 11, 2023. All of the citizens of Richmond's allegations against all of the defendants are the same. The citizens of Richmond are not asserting separate activities, discrete incidents, or distinct actions. These Defendants owned the properties, knew they were hazardous, and did nothing, causing an explosive fire, that caused plaintiffs' injuries. The local single event exception applies because the citizens of Richmond's Complaint alleges a single course of conduct in one state, which resulted in injuries in one state. *See Adams,* 2017 WL 1828908; *see also Rainbow Gun*, 760 F.3d at 413 (concluding that a single event exception applied when "Plaintiffs' claims do not arise from any one of the several alleged acts of negligence, but from the single occurrence that resulted from the collective related acts).

The City of Richmond is essentially arguing that any and all contributing actions leading up to an injury create continuous and ongoing events. This is extremely overbroad and unpractical. For example, under this logic, individuals hurt in a motor vehicle collision could have a claim of action against a driver and their insurance company under every policy for every year the driver was dangerously driving before and leading up to the motor vehicle collision where the injury actually occurred.

By way of another example, if an individual takes their car to a mechanic weekly for six (6) months to repair a brake pad and it subsequently fails six months later, causing them to crash

into someone, the event or occurrence would be the time of the motor vehicle collision. The injured party would then have a claim against the driver and the mechanic and would identify the repair work as evidence that the party knew or should have known the vehicle was dangerous. Despite a contributing harm having occurred months in advance, the event or occurrence that caused harm would be the date of the collision. The injured party would then have a claim against the driver and the mechanic for that single happening – not six months of continued claims.

This hypothetical could also be applied to the City of Richmond's argument that the local single event exception does not apply when plaintiffs sue multiple defendants, who are not acting in concert, for multiple activities. Under the City of Richmond's application, if a plaintiff is involved in a motor vehicle collision where the at-fault driver was working for a company, whose owner negligently hired and/or entrusted him with the vehicle, the collision would not be a single event when the company knew about his dangerous driving propensities for years and the owner was not in the car with him when the collision occurred. This again would produce an absurd result.

This illogical approach would be unbounded and would also open the doors to claims for events that did not cause individuals harm, upending the elements of standing. That is why the Courts have already established a clear bright-line rule to apply: were the plaintiffs repeatedly and continuously injured over a period of time as a result of a constant direct harm OR were plaintiffs injured as the result of a culminating and singular event.

The District Court's World Series analogy perfectly applies to this matter. (JA8). The World Series occurs towards the end of the baseball season. To qualify for the World Series, Major League Baseball teams must secure a postseason spot and win an initial playoff round to

21

advance. Notwithstanding whether a single baseball game of the World Series is defined as "an event" or if the maximum seven days of games that encompass the World Series is considered "an event," it is plainly understood that the pre-season, post-season, and qualifying games leading up to it does not negate the World Series or the "event." Although teams cannot qualify for the World Series without practicing, training, winning post-season games, and finishing at the top of their divisions, their conduct leading up to the World Series is not encompassed in the "event." The same applies to the facts of the citizens of Richmond's Complaint.

Irrespective of whether the Court finds that the singular day the fire started was "an event" or whether the seven days the fire burned to be "an event," the circumstances and dealings leading up to the fire are not part of "the event." The fire, regardless of what happened leading up to it, was a singular happening.

To boot, despite the of the citizens of Richmond's allegations about the buildup to this event over several years, there had never been a fire. This case does not involve continuous setting or occurrences of fires over a long period of time; there has been one fire. Therefore, this was a distinct, important, one-time happening at a single point in the past twenty years that meets the definition of an event or occurrence. The exception applies.

Furthermore, the citizens of Richmond's allegations of situations after the initiation of the fire (i.e. the evacuation order, the length of the fire, continued treatment, contamination in their homes, etc.) relates to their damages - not the evaluation of the single, injury causing event. This is akin to a hypothetical motor vehicle accident that occurred on April 11, 2023, wherein an injured party was off work from April 11-16; has ongoing treatment; and continued pain and suffering. The event or occurrence is nevertheless the date of the motor vehicle collision that

initiated an injured parties' damages, not the entire time they are affected therefrom. This is not a new or complex concept.

Most importantly, remanding this case would honor and adequately reflect the legislative intention of CAFA of allowing the case to remain in the state court when the fire itself and the impact on the proximate community was truly local. To say that a case brought by the citizens of Richmond, about a fire that occurred in the heart of Richmond, against the City of Richmond does not perfectly meet these credentials would strain credulity. Since the citizens of Richmond's claims arise from "an event or occurrence," the District Court had no basis for jurisdiction over the case and had to remand the case.

### 3. The City of Richmond Failed to Satisfy All of the Elements of a Mass Action Under CAFA to Properly Remove the Case to Federal Court.

Lastly, jurisdiction was not established at the time of removal when the City of Richmond did not show thar the exclusion did not apply. Since the exclusion is jurisdictional and the Court did not have jurisdiction over the claim when it was removed, it had to be remanded.

The City of Richmond removed this matter to the District Court on the basis that it was a *mass action* under 28 U.S.C. § 1332(d)(11). However, the City of Richmond failed to meet their burden in demonstrating that the Plaintiffs-Respondents' claims constituted a mass action and the inapplicability of the single event or occurrence exception under 28 U.S.C. § 1332(d)(11)(B)(i). *See Adams*, 2017 WL 1828908, at \*6; *Monsanto Co.*, 2010 WL 8752873, at \*3; and *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 447-48 (7th Cir. 2005).

In response, the City of Richmond argued a narrowed scope of the definition of mass action to only include 28 U.S.C. § 1332(d)(11)(B)(i), while entirely disregarding the second half of the definition under 28 U.S.C. § 1332(d)(11)(B)(ii) as an "exception" as opposed to a jurisdictional requirement. The definition of a mass action in its entirety cannot be ignored.

The exclusion is part of the definition of a "mass action." By defining "what a mass action is not," the exclusion furnishes a "limit[]" on the "definition" of "mass action." *Monsanto Co.,* No. 3:09cv471, 2010 WL 8752873, at *3; *Cooper v. R.J. Reynolds Tobacco Co.*, 586 F. Supp. 2d 1312, 1316 (M.D. Fla. Aug. 29, 2008). CAFA removability is destroyed by this limit and requires remand. *Lowery v. Honeywell Int'l, Inc.*, 460 F. Supp. 2d 1288, 1300 (N.D. Ala 2006); *Armstead v. Multi-Chem Grp., LLC.*, No. 6:11-2136, 2012 WL 1866862, at *9 (W.D. La. May 21, 2012). Therefore, the exclusion is a "jurisdictional requirement." *Abednego v. Aloca, Inc.*, No. 10-9, 2011 WL 941569, at *2 (D.V.I. Mar. 17, 2011). The fact that the statute utilizes the language "shall not include" further indicates the binary application of this exception to the definition of a "mass action." 28 U.S.C. § 1332(d)(11)(B)(ii).

Although there are no Seventh Circuit cases that directly touch upon removal where all elements of 28 U.S.C. § 1332(d)(11)(B)(i) are present but the District Court remands the case under the exceptions in 28 U.S.C. § 1332(d)(11)(B)(ii), there is ample basis for doing so *sua sponte.*

The District Court has no jurisdiction over a case that falls within the exclusion. *Holiday*, 2018 WL 11409352, at *2; *see also Spencer,* 953 F. 3d at 738; *Rainbow Gun Club, Inc.,* 760 F.3d at 408 (finding that the exclusion circumscribed the definition of a mass action); *Addison*, 398 F. Supp. 3d at 13 (stating that the exclusion precludes the Court from exercising jurisdiction).

The CAFA Senate Report further provides that "a mass action meeting the other applicable federal diversity jurisdiction criteria would," if it fell within the exclusion, "not be eligible for federal jurisdiction." S. Rep. No 109-14, at 46.

Therefore, the burden of proving that the case does not fall within the exception falls upon the party seeking the federal venue or the City of Richmond. *Adams*, 2017 WL 1828908 at *6;

*Monsanto*, 2010 WL 8752873, at \*3. This is a longstanding rule within the Seventh Circuit irrespective of CAFA. *Brill*, 427 F.3d at 447-58.

"The party invoking federal jurisdiction bears the burden of establishing that it exists." *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7ith Cir, 2023) (citing *Page v. Democratic Nat'l Comm.*, 2 F.4th 630 634 (7th Cir. 2021)). The City of Richmond only established part of the requirements upon removal under 28 U.S.C. § 1332(d)(11)(B)(i). When given the opportunity by the District Court to evidence why the exclusion did not apply, they failed in their burden.  Since the citizens of Richmond's Complaint satisfies the exclusion (for the aforementioned reasons), the District Court did not have jurisdiction. *See Spencer,* 953 F.3d at 739 n. 4; *Rainbow Gun Club*, 760 F.3d at 409 n.3; *Adams*, 2017 WL 1828908, at \*6.

Even if the burden was not on the City of Richmond, the Court has an independent duty to examine the basis of jurisdiction. 28 U.S.C. § 1441. Federal Courts have an independent obligation to ensure they have subject matter jurisdiction over each case "regardless of whether the parties have raised the issue." *Continental Indem. Co. v. Bll, Inc.*, 104 F. 4th at 636 (7th Cir. 2024) (citing *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021)). "Federal courts are of limited jurisdiction. They possess only that power authorized by [the] Constitution and statute." *Continental Indem. Co.*, 104 F.4th at 636. It is simply the federal court's responsibility to ensure it has jurisdiction. *Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 427 (7th Cir. 2009).

The District Court had an obligation to "address potential jurisdictional problems *sua sponte* at whatever point they arise in the proceedings." *George v. Islamic Republic of Iran*, 63 F. App'x 917, 918 (7th Cir. 2003) (citing *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002)). Therefore, the District appropriately acted *sua sponte* in not only offering the City

of Richmond an opportunity to explain why the exception did not apply but in recommending and ordering the matter be remanded back to state Court.

The City of Richmond additionally alleges that 28 U.S.C. § 1332(d)(11)(B)(i) is more analogous to 28 U.S.C. § 1332(d)(4) and that the exception is not jurisdictional. However, the predominant difference is that 28 U.S.C. § 1332(d)(4) explicitly instructs courts to relinquish jurisdiction it already has. The same cannot be said for 28 U.S.C. § 1332(d)(11)(B)(i) which does not presuppose jurisdiction.

Alternatively, a more analogous structure would be 28 U.S.C. § 1332(d)(11)(B)(iii)(III), which provides that "the term 'mass action' shall not include any civil action in which… all of the claims in the action are asserted on behalf of the general public… pursuant to a State statute…. [,]" This has been interpreted as a jurisdictional requirement. *See Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132, 136-37 (D.D.C. 2010); *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 1010 (D.D.C. 2008); *Connecticut v. Moody's Corp.*, No. 3:10cv546, 2011 WL 63905, at *4 (D. Conn. Jan. 5, 2011).

From a strictly practical standpoint, it would be counterintuitive to force a District Court to adjudicate a matter it did not have jurisdiction over simply because a party did not move for remand. This would impermissibly permit stipulating to federal jurisdiction. The District Court had to remand this matter.

Additionally, the City of Richmond is ultimately asking this Court to apply the same determination on jurisdiction in a completely separate class action, based on inapplicable and non-synonymous parameters. This is requesting the Court to disregard not only the elements of CAFA, but blatantly ignore longstanding constitutional subject matter jurisdiction requirements.

In the class action case, minimal diversity was established under the class action requirements that permitted removal - not under 28 U.S.C. § 1332(d)(11)(B)(ii). These are two isolated cases with different parameters and jurisdiction has to be analyzed accordingly. The District Court never, nor can they, asserted jurisdiction over this specific dispute just because it had a basis in the class action. Irrespective of any of the party's desires to keep common questions of fact and law before the same District Court, the parties cannot stipulate to or thwart jurisdiction upon the District Court. It is for that reason the District Court, on its own volition, remanded the case.

The City of Richmond provide no statutory or case law in support of this unsubstantiated request to assume jurisdiction. They also do not provide any arguments under res judicata or collateral estoppel – likely because neither apply to this legal issue. Since the jurisdictional analysis in the class action completely differed from the application of the mass action definition, it is not binding here.

## **<u>CONCLUSION</u>**

In conclusion, the District Court's Order Adopting Magistrate Judge's Recommendation (JA1-12) should be affirmed when the District Court did not have subject matter jurisdiction since the citizens of Richmond's Complaint involved a local, singular event or occurrence. The citizens of Richmond were injured by a singular happening when a local fire erupted on April 11, 2023. Because the citizens of Richmond's claims fall under an exception to the definition of a "mass action," the District Court did not have jurisdiction and properly remanded the case back to state court.

Respectfully submitted,

/s/ Trevor J. Crossen
Trevor J. Crossen (No. 18592-49)

/s/ Gina M. Koeneman
Gina M. Koeneman (No. 36989-29)

/s/ Andrew W. Ardizone
Andrew W. Ardizone (No. 38769-49)

CROSSEN LAW FIRM LLC
4661 Lisborn Drive
Carmel, Indiana 46033
T: (317) 939-6800
F: (317) 939-6801
Email: gina@crossenlawfirm.com
Email: trevor@crossenlawfirm.com
Email: andrew@crossenlawfirm.com
*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the page and word limitation of Fed. R. App. 32(7)(B) and Circuit Rule 32(a) and (b) and as this document, excluding the portions of the filing exempted by Fed. R. App. 32(f), contains 7,497 words (including footnotes).

2. This document complies with typeface requirements and the type-style requirements of Fed. R. App. 32(a)(5)(6), and Circuit Rule 32(b) given that this document has been dictated in a proportionally spaced typeface using Microsoft Word Office 365 in Times New Roman and 12-point font.

/s/ Gina M. Koeneman
Gina M. Koeneman (No. 36989-29)
Trevor J. Crossen (No. 18592-49)
Andrew W. Ardizone (No. 38769-49)
CROSSEN LAW FIRM LLC
4661 Lisborn Drive
Carmel, Indiana 46033
T: (317) 939-6800
F: (317) 939-6801
Email: gina@crossenlawfirm.com
Email: trevor@crossenlawfirm.com
Email: andrew@crossenlawfirm.com
*Counsel for Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2026, the foregoing Brief of Appellee was submitted for

filing with the Clerk of Court of the United States Court of Appeals for the Seventh Circuit

electronically via using the CM/ECF system and emailed to the following attorneys of record:

Andrew M. McNeil
Bradley R. Sugarman
Seth M. Thomas
Jackson L. Schroeder
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
amcneil@boselaw.com
bsugarman@boselaw.com
sthomas@boselaw.com
jschroeder@boselaw.com
*Attorneys for Appellant*

Arie Lipinski
LIPINSKI LAW
951 N Delaware Street
Indianapolis, Indiana 46202
Lipinski@lipinski-law.com
*Attorney for Seth Smith and Cornerstone Trading Group LLC*

Robert L. Bever
BBFCS ATTORNEYS
27 North 8th Street
Richmond, Indiana 47374
bbever@bbfcslaw.com

Jeffrey B. Fecht
RILEY BENNET EGLOFF
500 N. Meridian Street, Suite 550
Indianapolis, Indiana 46024
jfecht@rbelaw.com
*Attorneys for Third-party Defendant, First Bank Richmond*

Allison Wells Gritton
DINSMORE & SHOHL LLP
One Indiana Square, Suite 1800
211 N. Pennsylvania

Indianapolis, IN 46204
Allison.gritton@dinsmore.com
*Attorney for Third-party Defendant, Wayne County, Indiana*

James P. Freel
Ward, Hocker, & Thornton, PLLC
333 West Vine St., Suite 1100
Lexington, KY 40507
James.free@whtlaw.com

/s/ Gina M. Koeneman
Gina M. Koeneman (No. 36989-29)
Trevor J. Crossen (No. 18592-49)
Andrew W. Ardizone (No. 38769-49)
CROSSEN LAW FIRM LLC
4661 Lisborn Drive
Carmel, Indiana 46033
T: (317) 939-6800
F: (317) 939-6801
Email: gina@crossenlawfirm.com
Email: trevor@crossenlawfirm.com
Email: andrew@crossenlawfirm.com
*Counsel for Appellees*