No. 26-1864

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Tushawn Craig, et al.
*Plaintiffs-Appellees,*
v.
City of Richmond, Indiana, et al.
*Defendant-Appellant.*

Appeal from the United States District Court for the Southern District of Indiana
Case No. 1:25-cv-00782-MPB-MJD
The Honorable Matthew P. Brookman

## REPLY BRIEF OF APPELLANT

Andrew M. McNeil (No. 19140-49)
Bradley R. Sugarman (No. 22152-49)
Seth M. Thomas (No. 25834-49)
Jackson L. Schroeder (No. 35355-49)
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000

*Counsel for Defendant-Appellant*

May 27, 2026

i

# Table of Contents

Table of Contents ..............................................................................................................ii

Table of Authorities .......................................................................................................iii

Summary of the Argument ............................................................................................1

Argument...........................................................................................................................2

    I.   Reply to Appellees' Jurisdictional Statement......................................................2

    II.  The City's Reply and Objections to Plaintiffs' Statement of the Case ..............3

    III. The District Court Erred by Invoking CAFA Exceptions Sua Sponte..............6

    IV. CAFA's Single Event Exception Does Not Apply to Plaintiffs'
          Complaint ...................................................................................................................11

        A. This Court should interpret CAFA's "single event exception" to mean a
           singular happening as supported by the plain language of CAFA, its
           legislative history, and the well-reasoned decision of the Ninth Circuit ...11

        B. If this Court finds that continuous conduct may fall within CAFA's single
           event exception, the exception only applies to complaints that involve
           multiple defendants if they allege concerted or collective action................14

        C. Plaintiffs' allegations in their Complaint fail to satisfy CAFA's single event
           exception under either legal standard ...........................................................19

    V.  Plaintiffs' Claims Were Already Subject to the District Court's CAFA
          Jurisdiction .................................................................................................................24

Conclusion........................................................................................................................27

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, & Type-
       Style Requirements .................................................................................................28

Certificate of Service ......................................................................................................29

## <u>Table of Authorities</u>

Page(s)

Cases

*Abednego v. Aloca, Inc.*,
No. 10-009, 2011 WL 941569 (D.V.I. Mar. 17, 2011) ............................................................8

*Abraham v. St.Croix Renaissance Group, L.L.L.P.*,
719 F.3d 270 (3d Cir. 2013) ..................................................................................................17

*Adams v. Int'l Paper Co.*,
No. CV 17-0105-WS-B, 2017 WL 1828908 (S.D. Ala. May 5, 2017) .............................8, 18

*Addison v. Louisiana Reg'l Landfill Co.*,
398 F.Supp.3d 4 (E.D. La. 2019) ......................................................................................5, 17

*Allen v. Boeing Co.*,
784 F.3d 625 (9th Cir. 2015) .......................................................................................... passim

*Allen v. Monsanto Co.*,
No. 3:09-cv-471, 2010 WL 8752873 (N.D. Fla. Feb. 1, 2010) ...................................8, 12, 18

*Anderson v. Bayer Corp.*,
610 F.3d 390 (7th Cir. 2010) ...................................................................................................2

*Armstead v. Multi-Chem Grp., LLC*,
No. CIV.A. 6:11-2136, 2012 WL 1866862 (W.D. La. May 21, 2012) .....................................9

*Breuer v. Jim' Concrete of Brevard, Inc.*,
538 U.S. 691 (2003) ..............................................................................................................6, 7

*Brill v. Countrywide Home Loans, Inc.*,
427 F.3d 446 (7th Cir. 2005) ...................................................................................................8

*Bullard v. Burlington N. Santa Fe Ry. Co.*,
535 F.3d 759 (7th Cir. 2008) ...................................................................................................5

*Clearly v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) .................................................................................................25

*Continental Indem. Co. v. Bill, Inc.*,
104 F, 4th 630 (7th Cir. 2024) ...............................................................................................10

*Cooper v. R.J. Reynolds Tobacco Co.*,
586 F. Supp. 2d 1312 (M.D. Fla. Aug. 29, 2008) ...................................................................9

*Cunningham Charter Corp. v. Learjet, Inc.*,
592 F.3d 805 (7th Cir. 2010) .................................................................................................25

*Dart Cherokee Basin Operating Company, LLC v. Owens*,
135 S.Ct. 547 (2014) ..............................................................................................................13

*Davis International, LLC v. New Start Group Corp.*,
488 F.3d 597 (3d Cir. 2007) ..................................................................................................26

*Faye v. High's of Baltimore,*
  541 F. Supp. 2d 752 (D. Md. 2008)...................................................................................26

*Frith v. Blazon–Flexible Flyer, Inc.,*
  512 F.2d 899 (5th Cir. 1975) .........................................................................................26

*George v. Islamic Republic of Iran,*
  63 F. App'x 917 (7th Cir. 2003) ....................................................................................10

*Hamilton v. Burlington N. Santa Fe Ry. Co.,*
  No. A-08-CA-132-SS, 2008 WL 814619 (W.D. Tex. Aug. 8, 2008) ....................................18

*Hart v. FedEx Ground Package Sys., Inc.,*
  457 F.3d 675 (7th Cir. 2006) ......................................................................................6, 10

*Holiday v. Atl. Richfiled Co.,*
  No. 2:16-CV-525 JVB, 2018 WL 11409352 (N.D. Ind. Mar. 7, 2018)......................5, 15, 16

*Hukic v. Aurora Loan Servs.,*
  588 F.3d 420 (7th Cir. 2009) ........................................................................................10

*In re Abbott, Lab'ys,*
  698 F.3d 568.................................................................................................................6

*In re Burlington N. Santa Fe Ry. Co.,*
  606 F.3d 379 (7th Cir. 2010) ....................................................................................24, 25

*Kan. Pub. Employees Ret. Sys. v. Reimer& Koger Assocs., Inc.,*
  77 F.3d 1063 (8th Cir. 1996) .........................................................................................26

*Koral v. Boeing Co.,*
  628 F.3d 945 (7th Cir. 2011) ........................................................................................25

*LG Display Co. v. Madigan,*
  665 F.3d 768 (7th Cir. 2011) ..........................................................................................2

*Lou v. Belzberg,*
  834 F.2d 730 (9th Cir. 1987) .........................................................................................26

*Lowery v. Alabama Power Co.,*
  483 F.3d 1184 (11th Cir. 2007) ....................................................................................8, 9

*Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.,*
  760 F.3d 405 (5th Cir. 2014) ...............................................................................14, 15, 16

*Rightsell v. Carrington Mortgage LLC,*
  2026 WL 681741 (N.D. Ind., March 6, 2026) ...................................................................22

*Robertson v. Chevron USA, Inc.,*
  2016 WL 3667153 (E.D. La. July 11, 2016) .....................................................................18

*Spencer v. Specialty Foundry Prods. Inc.,*
  953 F.3d 735 (11th Cir. 2020) .......................................................................................15

*Sykes v. Cook Inc.,*
  72 F. 4th 195 (7ith Cir, 2023)........................................................................................10

*Webb v. Jarvis,*
  575 N.E.2d 992 (Ind. 1991)...........................................................................................22

**Statutes**

28 U.S.C. § 1291 ................................................................................3
28 U.S.C. § 1332(d)(2)..............................................................1, 8, 11, 24
28 U.S.C. § 1332(d)(11)(B)(i) ............................................................ passim
28 U.S.C. § 1332(d)(11)(B)(ii)............................................................9, 11, 13
28 U.S.C. § 1332(d)(11)(B)(ii)(I)............................................................11, 13
28 U.S.C. § 1453(c) ............................................................................1, 2, 3

**Rules**

Fed. R. App. P. 32(f)...........................................................................28
Fed. R. App. P. 5(c)............................................................................28

**Other Authorities**

2005 U.S.C.C.A.N. 3, S. Rep. No. 109-14 ....................................................7, 12, 13

## Summary of the Argument

This Court has appellate jurisdiction under § 1453(c) to review and reverse the district court's remand order. While the district court (and Plaintiffs) focus on certain allegations in Plaintiffs' Complaint regarding the fire, the Complaint alleges various facts encompassing nearly twenty years and numerous legal theories, which the City properly removed to federal court under CAFA. *First*, the City submits that CAFA mass action removal jurisdiction only requires defendants to demonstrate the requirements of 28 U.S.C. § 1332(d)(11)(B)(i) (as well as the remaining requirements of 28 U.S.C. § 1332(d)(2)) which form the basis of original jurisdiction under CAFA. *Second*, the City submits that this Court should interpret the single event exception as requiring a "single happening" consistent with the statutory language and the well-reasoned Ninth Circuit decision in *Allen v. Boeing*. Alternatively, the City submits that when, as here, Plaintiffs' Complaint involves a continuous course of conduct and multiple defendants, the single event exception requires allegations of "concerted or collective action." Plaintiffs' Complaint does not fall within either interpretation of the statutory exception. *Third*, the City submits the district court's remand order was also errant because it failed to consider its alternative basis for removal, that the district court already had jurisdiction under 28 U.S.C. § 1332(d)(2) based on the pending class action matter filed by the same two Plaintiffs, by the same counsel, involving the same allegations. For all

these reasons, the City respectfully submits that this Court should reverse the district court and remand this case with instructions to proceed on the merits.

**Argument**

## I.  *Reply to Appellees' Jurisdictional Statement.*

Appellees take issue with Appellant's jurisdictional statement. As to the district court's jurisdiction, Appellees' dispute regarding the district court's jurisdiction is the primary subject of this appeal and the legal basis for jurisdiction under the Class Action Fairness Act ("CAFA") is explained in detail throughout the Appellant's Brief and this Reply Brief.

Appellees' jurisdictional statement further states that the Seventh Circuit does not have appellate jurisdiction over this case. The position that appellate jurisdiction is lacking is incorrect for multiple reasons. *First*, this Court granted Appellants' petition for leave to appeal, whereas in both *Anderson v. Bayer Corp.* 610 F.3d 390 (7th Cir. 2010) and *LG Display Co. v. Madigan*, 665 F.3d 768 (7th Cir. 2011) this Court's opinions denied requests for permission to appeal under 28 U.S.C. § 1453(c). *Second*, in *Anderson* and *LG Display* this Court concluded that the original removal had not met the requirements of 28 U.S.C. § 1332(d)(11)(B)(i) and the Court declined the requests to appeal in those circumstances. The Court in *Anderson* found CAFA jurisdiction lacking, and only after found that it lacked appellate jurisdiction to reach "defendants' alternative argument for diversity jurisdiction, fraudulent misjoinder." 610 F.3d at 394. Here, Appellees concede

2

CAFA's jurisdictional requirements of 28 U.S.C. § 1332(d)(11)(B)(i) were met and this Court has jurisdiction under § 1453(c) to review the district court's remand order. *Third*, Appellees did not even address appellate jurisdiction under 28 U.S.C. § 1291 which Appellant provided as an alternative basis for appellate review. This Court's appellate jurisdiction is secure.

## II. *The City's Reply and Objections to Plaintiffs' Statement of the Case.*

In their Statement of the Case, Plaintiffs claim that the City has mischaracterized the allegations in their Complaint, claiming that the "fire is the singular event from which [Plaintiffs] were injured." (Dkt. 18, p. 10.) In making this assertion, Plaintiffs attempt to limit the allegations in their Complaint to merely one cause of action (negligence) and to one event (the fire). (Dkt. 18, pp. 10-13.) The City asserts that this limitation of the Complaint greatly simplifies and mischaracterizes the alleged conduct of the Defendants, the time period during which the conduct occurred, and the myriad of the claims for relief asserted by Plaintiffs.

As demonstrated in its opening brief, Plaintiffs' allegations spanned many years with different allegations against different Defendants during different time periods. (See Dkt. 12, pp. 31-34.) For example, Plaintiffs' allegations call out improper conduct by Defendants Seth Smith, Cornerstone Trading Group, LLC ("CTG"), and My-Way Trading, Inc. (collectively the "My-Way Defendants") in their use of the properties as "early as 2005." (Dkt. 1-3, at ¶ 4.) Plaintiffs also include allegations specific to the City

alleging knowledge and inaction regarding the properties as early as 2018.  For

example, Plaintiffs allege the City's Fire Department tasked its Bureau of Fire

Prevention to work with Defendant Seth Smith to cure fire code violations in 2018, the

City performed its own inspections of the properties resulting in issuance of ordinance

violations in 2019, and the City, acting through its Unsafe Building Commission

("UBC") issued orders to the My-Way Defendants to repair, demolish, or vacate the

properties. (*Id.* at ¶¶ 5, 8-10).

Plaintiffs also do not assert just a single claim for relief for negligence, but assert

eleven additional claims for relief, which involve a variety of allegations and different

elements for liability. (*Id*. at 11-20.) Importantly, several of these claims undoubtedly

involve actions and inaction that occurred many years before the fire occurred. For

example, the strict liability claim cannot be based solely on the fire but arises from

"engagement in ultra-hazardous activities" before the fire. (*Id*. at 12.) Plaintiffs' negligence

per se claim is based on alleged code violations in 2018 and 2019. (*Id.* at 17-19.) And Plaintiffs

alleged a nuisance dating back to at least 2019. (*Id.* at 6.)  Thus, Plaintiffs' allegations are not

limited to just one claim for relief (negligence) and one event or occurrence (the fire) at one

particular point in time.

Plaintiffs also make allegations in their Statement of the Case that are not part of

their Complaint stating:

> Before April 11, 2023, surrounding residents were never ordered to evacuate their
> homes; schools and other business did not shut down due to safety concerns; black

4

> smoke did not circulate through the streets; citizens could plant flowers in their gardens without them dying; … and the citizens of the City of Richmond did not have an actionable lawsuit for all of the various injuries they sustained as a result of that tragic day.

(Dkt. 18, p. 11.) None of these assertions are in the Complaint but rather are just arguments made in their brief. When assessing the single event exception, courts examine Plaintiffs' operative complaint. *See Holiday v. Atl. Richfiled Co.*, No. 2:16-CV-525 JVB, 2018 WL 11409352, *2 (N.D. Ind. Mar. 7, 2018) (looking at plaintiffs' allegations); *Addison v. Louisiana Reg'l Landfill Co.*, 398 F.Supp.3d 4, 13-14 (E.D. La. 2019) (same); *see generally Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("It does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed. This complaint, which describes circumstances common to all plaintiffs, proposes one proceeding and thus one trial.") Accordingly, this Court should disregard Plaintiffs' limiting assertions regarding the claims alleged in the Complaint when evaluating jurisdiction in this case.

Plaintiffs also object to the City's assertion that the new filing constitutes forum shopping. (Dkt. 18, p. 12.) Plaintiffs assert that "[i]n order to preserve the claims of potential class members and citizens who did not meet the definition of a class member, this individualized action was filed." (*Id.*) But Plaintiffs do not dispute that this filing was not made within the pending class action but rather was made in their preferred state court forum. Plaintiffs also state that 119 of the named plaintiffs are putative class

plaintiffs, whereas 33 plaintiffs are not.[1] Plaintiffs also suggest that forum shopping did

not occur because "remand was determined by the District Court *sua sponte*." (*Id.*, n. 6.)

The District Court's determination is irrelevant to Plaintiffs' attempt at forum shopping

which occurred when Plaintiffs, including the same two named Class Action Plaintiffs,

filed a separate non-class lawsuit while the class certification motion was pending.

### III.    *The District Court Erred by Invoking CAFA Exceptions Sua Sponte.*

Plaintiffs' response brief is largely unresponsive to the City's first argument, that

the Court should not have, on its own motion, applied the statutory exception to "mass

action" in remanding the case. The response does not dispute that this Court stated that

"mass actions *are removable to federal court*" if the requirements of 28 U.S.C. §

1332(d)(11)(B)(i) are met. *In re Abbott Lab'ys*, 698 F.3d at 571–72 (emphasis added). Even

more, the response admits that all the requirements of 28 U.S.C. § 1332(d)(11)(B)(i) were

met at the time of removal. (Dkt. 18 at p. 8.) No attempt was made to explain how this

Court's ruling in *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675 (7th Cir. 2006), and

the Supreme Court's ruling in *Breuer v. Jim' Concrete of Brevard, Inc.*, 538 U.S. 691 (2003)

on which *Hart* relies, are inapplicable here.

As stated before, *Breuer* noted in 2003 that the general removal statute begins

with the phrase "[e]xcept as otherwise expressly provided by Act of Congress," and

then provides that, once Congress provides defendants with a right to remove, "the

---

[1] These numbers also are not part of the record but merely asserted by Plaintiffs here.

burden is on plaintiff to find an express exception." 538 U.S. at 698 (emphasis added). Thereafter, Congress placed the four exceptions to the statutory definition of "mass action" in a separate subsection, and Congress then described this subsection as "exceptions." This caselaw is unchallenged by Plaintiffs.

Plaintiffs argue that the district court properly acted on its own motion in three ways. *First*, Plaintiffs argue that the exceptions are in fact "jurisdictional," but the cases cited offer little support for Plaintiffs' argument. *Second*, Plaintiffs argue that because the exception is jurisdictional, the City failed to meet its burden of disproving the exception applied. *Finally*, Plaintiffs cite some opinions discussing *sua sponte* jurisdictional review, but these cases do not address CAFA or this exception at all. Taken together, Plaintiffs' argument simply begs the statutory question posed, and offers no authority that a district court should go beyond evaluating whether the City's notice of removal met the requirements of 28 U.S.C. § 1332(d)(11)(B)(i) until after Plaintiffs have invoked a removal exception through the filing of a motion seeking remand.

The Congressional record clarifies that "under" subsection 1332(d)(11), a "civil action would be subject to federal jurisdiction, subject to several exceptions." S. Rep. No. 109-14, 49, 2005 U.S.C.C.A.N. 3, 44 (emphasis added). The legislative report establishes the requirements for removal as those items in 28 U.S.C. § 1332(d)(11)(B)(i). *Id.* ("If a mass action satisfies 28 U.S.C. § 1332(d)(11)(B)(i), it may be removed to a federal court, which is authorized to exercise jurisdiction over the action.") None of the

7

cases cited by the district court in its order, nor by Plaintiffs in their response brief, discuss *Breuer* or sua sponte review of statutory removal exceptions. (Dkt. 18 at 27-28.) And the cases cited all involve motions to remand filed by Plaintiffs. *See Adams v. Int'l Paper Co.*, No. CV 17-0105-WS-B, 2017 WL 1828908, at *2 (S.D. Ala. May 5, 2017) ("plaintiffs filed a Motion to Remand"); *Allen v. Monsanto Co.*, No. , 3:09-cv-471, 2010 WL 8752873, at *1 (N.D. Fla. Feb. 1, 2010) ("Plaintiffs then moved to remand"); *Abednego v. Aloca, Inc.*, No. 10-009, 2011 WL 941569, at *1 (D.V.I. Mar. 17, 2011) ("Plaintiffs have now moved to remand.")

Plaintiffs also cite cases involving defendants whose removal papers failed to demonstrate CAFA's jurisdictional requirements as to the amount in controversy. For example, *Brill* dealt with whether the defendant had satisfied CAFA's five million "amount in controversy" requirement – an element that is part of 1332(d)(2)'s jurisdictional requirements and is not a statutory exception. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005) (reversing remand order because Defendant had satisfied CAFA's amount in controversy requirement). Plaintiffs also cite *Lowery v. Alabama Power Co.*, but there the Eleventh Circuit plainly states that "CAFA sets forth at least four threshold requirements [in § 1332(d)(11)(B)(i)] for a federal court to have subject matter jurisdiction over a removed mass action." 483 F.3d 1184, 1221 (11th Cir. 2007). The Eleventh Circuit ultimately concludes that the Defendant failed to demonstrate CAFA's amount in controversy and disregarded the exceptions in §

1332(d)(11)(B)(ii) as they were "not relevant" to its jurisdictional determination. (*Id.* at 1202 n. 44.) Plaintiffs' reliance on *Armstead* also is unhelpful because the defendant there also failed to prove the jurisdictional amount. The opinion further noted that "***the plaintiffs have demonstrated***" that the single "event or occurrence" exclusion applied. *Armstead v. Multi-Chem Grp., LLC*, No. CIV.A. 6:11-2136, 2012 WL 1866862, at *7 (W.D. La. May 21, 2012)(emphasis added). Finally, Plaintiffs cite *Cooper v. R.J. Reynolds Tobacco Co.*, 586 F. Supp. 2d 1312, 1316 (M.D. Fla. Aug. 29, 2008), but that case supports the City's argument. There the district court first evaluated whether the case was a "mass action" by looking at the 28 U.S.C. § 1332(d)(11)(B)(i) requirements and concluded that defendants had properly removed the case, before evaluating (and declining to apply) the statutory exceptions in 28 U.S.C. § 1332(d)(11)(B)(ii). *Id.* These cases all support the City's position that courts look to plaintiffs to assert and prove statutory exceptions, such as the single event or occurrence exclusion at issue here.

Plaintiffs also argue that it was the City's burden to prove the exception did not apply, but this argument is circular and simply assumes that the exception is jurisdictional and must be addressed by defendants at the time of removal. The City has fully explained below why the exception does not apply and the Court can, if it reaches the exception, find that the City met its burden at the time of removal and the exception does not destroy jurisdiction. (*See* infra, Part IV.) But first, this Court should, consistent with *Breuer* and *Hart,* direct district courts that the exception need not be disproved to

9

secure CAFA's mass action jurisdiction at the time of removal, rather Plaintiffs must assert and prove mass action exceptions after removal.

Lastly, Plaintiffs' cited cases involving sua sponte jurisdictional review are inapposite. This Court's decision in *George v. Islamic Republic of Iran*, 63 F. App'x 917, 918 (7th Cir. 2003) was issued before CAFA was enacted and relates to a remand for lack of standing. While *Continental Indem. Co. v. Bill, Inc.*, 104 F, 4th 630 (7th Cir. 2024) is more recent, it does not mention CAFA and merely affirmed that a garnishment proceeding was not within the district court's ancillary enforcement jurisdiction. 104 F. 4th at 636 (7th Cir. 2024). *See also Sykes v. Cook Inc.*, 72 F. 4th 195, 205 (7ith Cir, 2023) (1332(a) jurisdiction lacking in MDL where Plaintiffs' alleged injuries made clear the amount in controversy was not satisfied); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009) (court had federal question jurisdiction). These cases stand merely for the generalized principle that district courts must self-evaluate their own jurisdiction but offer no insight on whether these mass action exceptions form part of the CAFA jurisdictional requirements that defendants must prove as part of a notice of removal.

In *Hart*, the Seventh Circuit noted that CAFA expanded substantially federal court jurisdiction over class actions and that its provisions should be read broadly, with a strong preference toward removal. 457 F.3d at 681 (7th Cir. 2006). Because Congress placed the single event or occurrence exception separate from CAFA's "mass action" jurisdictional prerequisites, the district court erred by embarking on an inquiry into

statutory exceptions that had not been invoked by Plaintiffs. The City had satisfied, at the time of removal, the jurisdictional requirements of 28 U.S.C. § 1332(d)(11)(B)(i). The City had also satisfied the other requirements of 28 U.S.C. § 1332(d)(2). Having demonstrated all of the requirements for CAFA removal, the district court's "original jurisdiction" under CAFA was secure. Such a determination is consistent with the language in the statute and Congress' description of § 1332(d)(11)(B)(ii) as statutory exceptions to jurisdiction, and the holding of *Breuer* which places the burden on Plaintiffs to assert and prove statutory exceptions.

## IV. *CAFA's Single Event Exception Does Not Apply to Plaintiffs' Complaint.*

### A. This Court should interpret CAFA's "single event exception" to mean a singular happening as supported by the plain language of CAFA, its legislative history, and the well-reasoned decision of the Ninth Circuit.

The district court held that an "event" under the "single event or occurrence exception" to the mass action definition includes "continuing tortious conduct." (JA8, JA9-10.) Plaintiffs latch on to this conclusion and argue that their allegations about "the fire" support the lower court's remand decision. (Dkt. 18, p. 16.) This interpretation of the single event exception stretches the statutory language too far and undermines the plain language of CAFA as well as its legislative history.

The statutory language at issue provides that a "mass action" does not include a civil action in which "all claims in the action arise from *an* event or occurrence in the State where the action was filed." 28 U.S.C. § 1332(d)(11)(B)(ii)(I) (emphasis added). As

11

the Ninth Circuit noted in *Allen*, the "common definition of 'event' is 'something (especially something important or notable) that happens" or "a thing that happens, esp. one of importance." *Allen v. Boeing Co.*, 784 F.3d 625, 630-31 (9th Cir. 2015) (quoting the Merriam-Webster and The New Oxford American Dictionary). It further defined "occurrence" as "'something that happens' or 'an incident or event.'" *Id.* at 631 (quoting the same sources). Based on these definitions, the Ninth Circuit concluded that for purposes of CAFA, an "event" or an "occurrence" were "most commonly and reasonably" understood to "refer to a singular happening," a conclusion supported by the Congressional directive for "this provision to be interpreted strictly by federal courts." *Id.* at 631, 632 (quoting S.Rep. No. 109-14 at 7 (2005), *reprinted in* U.S.C.C.A.N 3, 44). To the Ninth Circuit, this legislative directive "draws the line" between a one-time happening "and a continuing course of pollution, contamination, or conduct that occurs over a period of years." *Id.* at 632. The court concluded that within CAFA the "an event or occurrence" language "was not intended to cover something like the Civil War," not because the Civil War is not a historical "event," but because "for purposes of CAFA, the terms most commonly and reasonably refer to a singular happening." *Id.* at 630.

The Ninth Circuit noted that the legislative history states that the exception is to "be interpreted strictly by federal courts" and that the same history directed the exception applied to a "'chemical spill' not chemical spills." *Id.* These exceptions to CAFA are to be strictly interpreted and as noted by the Supreme Court in *Dart*, there is

no presumption against removal jurisdiction under CAFA. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S.Ct. 547, 554 (2014) (quoting S.Rep. No. 109–14, at 43). In short, the proper interpretation of "an event or occurrence" as used in § 1332(d)(11)(B)(ii)(I) is to interpret it as referring to a single happening because that definition: (1) reflects the most common understanding of the terms; (2) is consistent with, and furthers the purposes of CAFA; and (3) strictly construes CAFA's statutory exceptions to federal jurisdiction under CAFA are to be strictly construed.

Plaintiffs and the district court here, by contrast, applied a broader, more unlimited definition of "an event or occurrence" that is inconsistent with these principles. The district court allowed that "[b]oth a single baseball game and the World Series, for example, could be accurately described as 'events,' even though the World Series comprises up to seven games." (JA8.) Plaintiffs, meanwhile, offer several scenarios they argue constitute a single event or occurrence, including the baseball championship or a car accident following six months of weekly brake repairs. (Dkt. 18, pp. 21-22.) But these examples of continuous conduct read the statutory exception broadly and favor remand over removal jurisdiction to the contradiction of CAFA's legislative history. *See Allen*, 784 F.3d at 631 ("In other words, the statute requires that the district court review the allegations of a complaint to determine whether all the claims are based on a singular happening.").

**B. If this Court finds that continuous conduct may fall within CAFA's single event exception, the exception only applies to complaints that involve multiple defendants if they allege concerted or collective action.**

Even if the statutory exception could encompass continuous conduct, the exception does not apply to allegations in a complaint against multiple defendants without specific allegations of concerted or collective action. The Ninth Circuit's decision in *Allen* analyzes decisions from the Fifth and Third Circuits and explained that even under the broader interpretation of event that includes continuous conduct, the single "event or occurrence" exception does not apply when there are different defendants who played different roles in plaintiffs' allegations. Furthermore the more recent decision from the Eleventh Circuit in *Spencer* describes this same collective action requirement.

There were two defendants in *Allen*. One was The Boeing Company, which was accused of releasing toxins into the groundwater around its facility for more than 40 years. *Allen*, 784 F.3d at 626. The other, Landau, was Boeing's environmental contractor who allegedly was negligent in its investigation and remediation of the pollution. *Id.* In an alternative analysis, the Ninth Circuit considered the case under the more liberal interpretation of "an event or occurrence" that allowed for "a pattern of conduct in which the pattern is consistent in leading to a single focused event that culminates in the basis of the asserted liability." *Id.* at 633 (quoting *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 412 (5th Cir. 2014)).

14

Using that approach, the Ninth Circuit still found that "Plaintiffs do not allege a single event or occurrence from Boeing's or Landau's acts." *Id.* Specifically, the court noted that Boeing "is alleged to be responsible for the leeching of hazardous materials over forty years and Landau is alleged to be responsible for negligently failing to remediate the pollution (but not to have caused the pollution) for over a decade." *Id.* at 633-34. The court emphasized that, "perhaps" if the plaintiffs had sued just one or the other entity, they may have satisfied the "local single event exception," but plaintiffs were asserting "claims against two distinct defendants for at least two separate activities." *Id.* at 634. *See also Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 743 (11th Cir. 2020) (there must be "a connection among the Defendants; a culminating event; *and* allegations that would reasonably constitute one 'event or occurrence'," and the "acts that led to the harm-causing event must be 'collective' and 'related'.").

This is the same approach employed by the Northern District of Indiana in *Holiday v. Atlantic Richfield Company*, where current and former residents of a housing complex sued various manufacturing entities for lead and arsenic contamination dating back to 1906. 2018 WL 11409352, at * 1. The court concluded the plaintiffs could not show that their claims arose out of "an event or occurrence" because there were "multiple [d]efendants polluting the area of the Housing Complex, each [d]efendant carrying on different activities and owning different locations over the span of a century." *Id.* at * 2. The court in *Holiday* noted that Plaintiffs were masters of their own

15

pleading and *to wit*, if plaintiffs "had alleged that [d]efendants acted in concert, and if the Court agreed with the guidance from the Third and Fifth Circuits [in *Abraham* and *Rainbow Gun Club*], then it could possibly agree that [d]efendants' singular objective that caused pollution is a basis to find that an event or occurrence exception applies even if multiple alleged wrongdoers are involved." *Id.* But the court in *Holiday* found the complaint lacked allegations of collective action, and thus held plaintiffs "cannot show that their claims arose out of 'an event or occurrence.'" *Id.*

Plaintiffs' caselaw cited in response support this interpretation, as none of them involve a case in which the "single event or occurrence" definition was applied to defeat CAFA jurisdiction when multiple defendants were engaged in separate activities while not acting in concert together. In *Rainbow Gun Club*, the Fifth Circuit found no CAFA jurisdiction because the three defendants, defined collectively as "Denbury," jointly were accused under Louisiana law of negligently operating an oil well. *Rainbow Gun Club*, 760 F.3d at 407. From here, the court rejected Denbury's argument that the plaintiffs' claims "actually ar[o]se from a number of different 'events,' namely the five separate incidents of negligence that the [p]laintiffs alleged in their complaint." *Id.* at 412. In doing so, the court noted those "multiple acts of negligence" gave "causal substance to the event – the failure of the Well from which the [p]laintiffs' claims arise." *Id.* Here, by contrast, there are two separate lines of defendants engaged in two separate

16

lines of alleged conduct that provide different causal substance to the event – which

based on Plaintiffs' complaint is more than just "the fire."

The same is true in *Abraham v. St. Croix Renaissance Group, L.L.L.P,* in which the

Third Circuit found no CAFA jurisdiction against a single defendant. 719 F.3d 270, 278-

279 (3d Cir. 2013). There, the single defendant, SCRG, purchased a refinery site

"knowing that the loose bauxite and piles of red mud 'had the propensity for

particulate dispersion when exposed to wind' that would be 'inhaled by [p]laintiffs,

deposited onto [p]laintiffs' persons, and real and personal properties, and deposited

into the cisterns'" that provided drinking water to the plaintiffs. *Id.* at 273. Reading

"event" and "occurrence" broadly to include "circumstances that share some

commonality and persist over a period of time," the Third Circuit found that the

complaint alleged that "the red mud containing the various hazardous substances was

present through the site." *Id.* at 278, 280. There were no allegations, however, of any

conduct by any defendant other than SCRG; as such, *Abraham* does not inform the

question before this Court involving different defendants with differing legal theories.

The various district court decisions cited by Plaintiffs (Dkt. 18, p. 19) either have

the same limitations or compel the same result. *See Addison*, 398 F.Supp.3d at 14

("Although this case involves an environmental tort, the Court finds the emission of

odors and chemicals from various sources, caused by various failures on the parts of

various [d]efendants, at different times over a period of years, does not constitute a

single focused event such as occurs in a chemical spill."); *Adams v. Int'l Paper Co.*, 2017 WL 1828908, * 7 (S.D. Ala. May 5, 2017) ("The [p]laintiffs' claims do not arise from any one of the several alleged acts of negligence, ***but from the single occurrence that resulted from the collective related acts***.") (emphasis in original); *Robertson v. Chevron USA, Inc.*, 2016 WL 3667153, *9 (E.D. La. July 11, 2016) (remand denied where court found no single event or occurrence "because the allegations involve the operations of five different pipe-cleaning defendants cleaning pipe for nineteen different oil companies at various locations on separate properties owned by three different landowners over the course of 34 years."); *Allen v. Monsanto Co.*, 2010 WL 8752873, * 9 (N.D. Fla. Feb. 1, 2010) (remanding the case where all defendants collectively engaged in the same conduct, namely, allowing "PCB's to be released into the waterways."); *Hamilton v. Burlington N. Santa Fe Ry. Co.*, No. A-08-CA-132-SS, 2008 WL 814619, * 12 (W.D. Tex. Aug. 8, 2008) ("The Court further finds the 100 year chain of actions allegedly taken by different [d]efendants at different times with different negligent or intentional motivations in these related cases cannot constitute an 'occurrence' having a common nucleus of operative facts as that concept has been developed in the case law.").

The district court erred by limiting *Allen* and *Holiday* as only discussing the "number of defendants" and changing the pleading standard of "collective or concerted" action into a "culminating event" standard. (JA10-11.) To the district court, so long as two separate defendants acting separately ultimately converged into a single

18

event, the exception applies and CAFA jurisdiction is destroyed. (*Id.*) But the caselaw requires more for multiple defendants to engage in a single "event or occurrence." Specifically, Plaintiffs must affirmatively allege in their Complaint that the defendants were acting collectively, or in concert. As explained more fully below, the single "event or occurrence" exception does not apply to this case where the allegations in Plaintiffs' Complaint alleged one set of legal theories against some defendants (the My-Way Defendants) and a distinct separate set of legal theories and factual support against another (the City).

### C. Plaintiffs' allegations in their Complaint fail to satisfy CAFA's single event exception under either legal standard.

The fault in the analysis by both the district court and Plaintiffs, however, primarily lies in their narrow reading of Plaintiffs' quite expansive complaint, paired with an overbroad reading of the "single event or occurrence" exception contrary to established CAFA precedent. Plaintiffs' Complaint does not allege a single happening or occurrence. Instead, it outlines decades of actions by the My-Way Defendants and a separate and distinct collection of alleged acts and omissions by the City. That is, the operative complaint outlines a series of separate events or occurrences by different actors giving rise to the claims in this action. Notably, although Plaintiffs now argue that "the fire" is the singular event causing their injuries, in their complaint, they routinely alleged that their injuries were the "direct and proximate result of Defendants'

*negligence and the fire*." (*See* Dkt. 1-3, ¶¶ 25-31.) (emphasis added).  That language must be given effect under CAFA. *See Allen*, 784 F.3d at 631.

And even if this Court might consider a broader "continuous conduct" standard for the exception, Plaintiffs did not allege in their Complaint concerted conduct by all defendants forming one event. Plaintiffs assert claims against the My-Way Defendants based on those defendants' industrial activities and persistent disregard of fire codes and accumulation of combustible materials. (Dkt. 1-3, ¶¶ 4-10.) In this way, the My-Way Defendants are comparable to Boeing – the parties allegedly responsible for creating the conditions presenting the unacceptable risk to the plaintiffs, whether it is the contaminants in *Allen* or the combustible materials here. At the same time, the City is comparable to Landau – the parties allegedly responsible for failing to timely remedy the dangerous conditions created by the other defendants, whether it is negligence in conducting an environmental cleanup or in enforcing fire codes and safety orders. These allegations represent "two separate activities" asserted against "two distinct defendants," *Allen*, 784 F.3d at 634, which allows this case to avoid the single event or occurrence exception and fit comfortably with CAFA's mass action definition.

As to the City, Plaintiffs' specific allegations were that it "never took any actions to remedy, repair, demolish, vacate, or otherwise comply with the necessary actions that

had been ordered by the Unsafe Building Commission." (Dkt. 1-3, ¶ 14.)[2] To be clear, the City did not place combustible materials on the property and is not alleged to have done so; instead, the City is alleged to have committed various torts through its own acts and omissions in failing to address the property conditions created by the other three defendants.[3] These allegations establish that there was no singular event or occurrence that gave rise to Plaintiffs' claims in this case. The district court's remand order should be vacated on this basis.

In their response, Plaintiffs attempt to apply the exception by arguing that the City has mischaracterized Plaintiffs' Complaint and allegations. (Dkt. 18, pp. 14-15.) In doing so, Plaintiffs again attempt to limit their Complaint and allegations to one of its claims for relief (negligence) and a single event or occurrence (the fire). (Dkt. 18, pp. 14-15.) However, Plaintiffs' allegations involve multiple actions and inaction against multiple defendants over a course of many years, with twelve asserted claims for relief and different conduct asserted against the different Defendants. (*See* supra, Part II.) The

---

[2] The Unsafe Building Commission is a commission within the City of Richmond (*see* *https://www.richmondindiana.gov/boards-and-committees/unsafe-building-commission*)

[3] In another example of Plaintiffs' recasting their complaint in their appellate briefing, they contend in their brief that the "chain of events" that "caused the injuries is not everything building up in twenty years, but the literal spread of the fire from parcel to parcel." (Dkt. 18, p. 22.) In their complaint, however, Plaintiffs alleged that the undefined "Defendants' tortious conduct of failing to maintain the Industrial Facility and the hazardous contents therein set in motion a chain of events resulting in a widespread fire . . ." (Dkt. 1-3, ¶ 15.) That is, in their complaint, Plaintiffs' allegations focused on everything building up for almost twenty years.

claims for relief are based on a variety of allegations with different elements of liability for the different claims.

Plaintiffs appear to suggest that all their claims can be boiled down to the same elements. Citing *Rightsell v. Carrington Mortgage LLC*, 2026 WL 681741 (N.D. Ind., March 6, 2026), they assert "the elements of a personal injury tort are: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; and (3) that the breach caused injury to the plaintiff." (Dkt. 18, p. 14.) In *Rightsell*, however, the Northern District of Indiana addressed the claims of a pro se plaintiff that did not assert any specific tort cause of action. In laying out these elements of a tort claim, the Northern District cited *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991) where the specific citation was to the elements of a negligence claim, not any and all personal injury tort claims. Contrary to Plaintiffs' suggestion, the allegations and elements of each of its many claims alleged in the Complaint for relief are different and cannot be reduced to the elements of a negligence claim.

Plaintiffs also assert that the City is "overcomplicating this simple lawsuit," claiming that Plaintiffs were "living their lives unharmed and unaffected by the activities and dealings at the Industrial Facility until the day of the fire." (Dkt. 18, p. 15.) But Plaintiffs' Complaint alleges that "**as early as 2005**, complaints from citizens were made about the conditions of the property wherein Seth Smith, Cornerstone, and My-Way Trading converted plastic waste into materials to recycling facilities." (Dkt. 1-3, ¶

4.) (emphasis added). Plaintiffs also assert claims based on engagement in ultra-hazardous activities, code violations, unsafe building orders and development of a nuisance at the properties that predate the 2023 fire by many years. (Dkt. 1-3, pp. 4-6, 11, 15, 17-19.)

To further support its claim of a simple lawsuit, Plaintiffs further assert: "Defendants absolutely failed to adhere to Building Commission Orders, neglected to follow applicable codes or ordinances, conducted ultra hazardous activities, and dumped thousands upon thousands of pounds of plastic across three parcels of land for years." (Dkt. 18, p. 15.) Plaintiffs' use of the term "Defendants" collectively makes it seem that the allegations involve only a few facts and are the same legal theories as to all defendants. However, Plaintiffs' statement concerns the actions and inaction of the My-Way Defendants, only. It was the City that in 2019 issued unsafe building orders to the My-Way Defendants. Plaintiffs allege the City did not take sufficient action to address the conditions created by My-Way Defendants on the property (see Dkt. 1-3, ¶ 14), but it was the My-Way Defendants that "conducted ultra hazardous activities, and dumped thousands upon thousands of pounds of plastic across three parcels of land for years." Plaintiffs are simplifying and mischaracterizing the allegations of its Complaint to make it appear like a "simple lawsuit," but it is a complicated case involving multiple actions and inaction against multiple Defendants over a course of almost 20 years, with

twelve asserted claims for relief and different conduct asserted against the different Defendants.

### V. Plaintiffs' Claims Were Already Subject to the District Court's CAFA Jurisdiction.

The City's notice of removal stated two separate bases for removal, but the district court's remand order only addressed the removal as a "mass action" under CAFA. (JA21-22.) As an alternative to the mass action removal discussed above, the City properly removed this action under CAFA as the Southern District of Indiana had affirmed its subject matter jurisdiction in the class action proceeding. (*Id.*)

Plaintiffs argue that the Class Action was an "entirely separate class action suit relating to the same fire" and that the other removal was affirmed "based on inapplicable and non-synonymous parameters." (Dkt. 18, p. 9.) They argue the City is seeking to "disregard...the elements of CAFA" and that it has provided "no statutory or case law in support of this unsubstantiated request to assume jurisdiction." (*Id.* at p. 29.)

The instant case was filed by the same counsel, by the same two named plaintiffs who filed the class action proceeding, involving the same set of operative facts. In its notice of removal, the City stated that "many of these same Plaintiffs are putative class members and the class action motion is still pending before this Court." The City noted that it had already survived a motion to remand in the class action and the Southern District of Indiana "previously ruled that it maintains jurisdiction over the class action claims under CAFA under 28 U.S.C. § 1332(d)(2.)"

24

The City cited numerous authorities demonstrating that it was improper for Tushawn Craig and Marquetta Stokes to avoid the Court's ruling on the remand order by filing a second lawsuit. *See Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011) ("the aim of the removal provision is to prevent plaintiffs from trying to circumvent the Class Action Fairness Act by bringing a class action as a mass action."); *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010) (Plaintiffs could not avoid federal jurisdiction by "removing the class allegations") s*ee also Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805 (7th Cir. 2010); *Clearly v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011). Plaintiffs do not address these cases in their response.

Here, Plaintiffs Mass Action filing was an improper attempt to avoid the district court's denial of remand in the Class Action proceeding. The two named plaintiffs and their counsel sought to manufacture a precautionary remand of their own by bringing a "mass action" in their preferred venue. This Court's controlling precedent in *In re Burlington Northern*, 606 F.3d 379, 381 (7th Cir. 2010) prohibits such tactics. But the district court's remand order here essentially rewarded Plaintiffs' forum manipulation.

This case demonstrates the hypothetical discussed from *Burlington Northern. Id.* ("plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court.") The City was not asserting a novel or unexplored form or jurisdiction as Plaintiffs' response suggests, but rather was seeking to avoid litigation in two separate

forums, particularly where the City had already prevailed over a prior motion to remand. This Court has previously stated that "a case 'should not be shunted between court systems'" in similar circumstances. *Id.* (citing *Cunningham*, 592 F.3d at 807).

Moreover, the City's brief demonstrated other mechanisms that district courts have used to disapprove of efforts to subvert their jurisdiction. For example, some courts have enjoined the second lawsuit. *See Faye v. High's of Baltimore*, 541 F. Supp. 2d 752, 759 (D. Md. 2008) (enjoining Plaintiffs from prosecuting second-filed state court suit); *Davis International, LLC v. New Start Group Corp.*, 488 F.3d 597 (3d Cir. 2007); *Kan. Pub. Employees Ret. Sys. v. Reimer& Koger Assocs., Inc.*, 77 F.3d 1063, 1069 (8th Cir. 1996) ("plaintiff cannot file essentially the same case in a second state action to subvert federal jurisdiction."); *Lou v. Belzberg*, 834 F.2d 730, 740–741 (9th Cir. 1987) ("We agree with the Fifth Circuit that where a second state court suit [attempts to subvert removal] a federal court may enter an injunction."); *Frith v. Blazon–Flexible Flyer, Inc.*, 512 F.2d 899, 901 (5th Cir. 1975) ("when a district court finds that a second suit filed in state court is an attempt to subvert the purposes of the removal statute, it is justified and authorized . . . in enjoining the proceedings in the state court.") Plaintiffs' response offer no response to these cases either.

Plaintiffs' Complaint was an attempt to evade federal court jurisdiction after CAFA jurisdiction was affirmed in the Class Action. To the extent that CAFA's single event exception could apply, and the City submits that it does not, the district court

26

should have evaluated and ruled upon the City's alternative removal argument. Rather than remanding Plaintiffs' case back to state court, the district court should have noted that its CAFA subject matter jurisdiction was secure as previously determined in the Class Action and because the case was filed by the same counsel, for the same two named plaintiffs who had filed the Class Action proceeding, and the case involved the same set of operative facts, the Court's prior denial of remand prohibited Plaintiffs from filing a second state action to subvert federal jurisdiction.

## Conclusion

The Court should reverse the remand order, conclude the district court has subject matter jurisdiction, and order the district court to proceed with the merits.

Dated: May 27, 2026

Respectfully submitted,

/s/ *Seth M. Thomas*
Andrew M. McNeil (No. 19140-49)
Bradley R. Sugarman (No. 22152-49)
Seth M. Thomas (No. 25384-49)
Jackson L. Schroeder (No. 35355-49)
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000 (phone)
(317) 684-5173 (fax)
amcneil@boselaw.com
bsugarman@boselaw.com
sthomas@boselaw.com
jschroeder@boselaw.com
*Attorneys for Defendant-Appellant*

27

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, & TYPE-STYLE REQUIREMENTS</u>

1.      This document complies with the page and word limitations of Fed. R. App. P. 5(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,859 words (including footnotes).

2.      This document complies with the typeface requirements and the type-style requirements of Fed. R. App. P. 32(a)(5), (6) and Circuit Rule 32(b) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in Palatino Linotype 12 and footnotes in Palatino Linotype 11.

<u>*/s/Seth M. Thomas*</u>
Andrew M. McNeil (No. 19140-49)
Bradley R. Sugarman (No. 22152-49)
Seth M. Thomas (No. 25834-49)
Jackson L. Schroeder (No. 35355-49)
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
amcneil@boselaw.com
bsugarman@boselaw.com
sthomas@boselaw.com
jschroeder@boselaw.com
*Attorneys for Defendant-Appellant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 27, 2026, the foregoing Reply Brief of Appellant by Defendant-Appellant, City of Richmond, Indiana, was submitted for filing with the Clerk of the Court of the United States Court of Appeals for the Seventh Circuit electronically by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage-paid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Robert L. Bever
BBFCS ATTORNEYS
27 North 8th Street
Richmond, IN 47374
bbever@bbfcslaw.com

Jeffrey B. Fecht
500 N. Meridian St., Suite 550
Indianapolis, IN 46024
jfecht@rbelaw.com

*Attorneys for Third-Party Defendant, First Bank Richmond*

Arie J. Lipinski
LIPINSKI LAW
951 N Delaware Street
Indianapolis, IN 46202
lipinski@lipinski-law.com

*Attorney for Seth Smith, My-Way Trading, Inc. and Cornerstone Trading Group, LLC*

James P. Freel
Ward, Hocker & Thornton, PLLC
333 West Vine St., Suite 1100
Lexington, KY 40507
James.freel@whtlaw.com

*Attorney for Third-Party Defendant,*
*Certified Parts Corporation*

Allison Wells Gritton
Dinsmore & Shohl LLP
One Indiana Square, Suite 1800
211 N. Pennsylvania
Indianapolis, IN 46204
Allison.gritton@dinsmore.com

*Attorney for Third-Party Defendant, Wayne*
*County, Indiana*

/s/   *Seth M. Thomas*
Seth M. Thomas